# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | C/A No. 97-01929-JW |
| Marine Energy Systems Corporation, A South Carolina Corporation, | Adv. Pro. No. 08-80017-JW |
| Debtor(s). | Chapter 7 |
| W. Ryan Hovis, Trustee, | **ORDER** |
| Plaintiff(s), | |
| v. | |
| William J. Gilliam, Internal Revenue Service, South Carolina Department Of Revenue, and the Gilliam Exempt Family Trust, | |
| Defendant(s). | |

## ORDER GRANTING THE UNITED STATES OF AMERICA'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes upon before the Court upon the United States of America's ("IRS") Motion for Summary Judgment ("Motion"). The Motion is opposed by William J. Gilliam ("Gilliam") but no other party filed a response to the Motion. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

---

[1]    To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

Though the facts of this case involve a time span of nearly two decades and multiple venues regarding Gilliam's attempt to dispute his tax liability to the IRS, the crux of the matter presently before the Court is which creditor of Gilliam is entitled to receive the $100,000.00 in settlement proceeds presently held by the trustee for Marine Energy Systems Corporation ("MESC"). For the reasons set forth herein, the Motion of the IRS is granted and the subject settlement proceeds and any amounts later received, up to the amount of the taxes addressed herein, shall be disbursed to the IRS pursuant to this Order.

## FINDINGS OF FACT

### I.    Background

1.    On March 4, 1997, MESC, a South Carolina Corporation, filed for bankruptcy under Chapter 11 of the bankruptcy code. The case was converted to a Chapter 7 proceeding on November 30, 1998, with W. Ryan Hovis ("Hovis") appointed to serve as trustee.

2.    Prior to MESC's petition date, Gilliam was the president and sole shareholder of MESC.

3.    Gilliam commenced a bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (C/A No. 96-76468) in the United States Bankruptcy Court for the District of Delaware on July 8, 1996 and venue was subsequently transferred to this Court.[2]

4.    Prior to his petition date, Gilliam, as settlor, also created the Gilliam Exempt Family Trust ("GEFT").

---

[2]    Gilliam's case and the MESC case were assigned to the undersigned on March 1, 2006 upon the retirement of Judge Wm. Thurmond Bishop.

5.      After several failed attempts to confirm a chapter 11 plan, Gilliam's case was converted, with the consent of Gilliam, to a chapter 7 proceeding on January 28, 1998.  Robert F. Anderson ("Anderson") was appointed as chapter 7 trustee for Gilliam's estate.

6.      Following his appointment, Anderson retained a tax professional to submit tax returns for Gilliam's bankruptcy estate.  The returns submitted by Anderson's professional were accepted by the IRS and have resulted in a substantial personal tax liability for Gilliam.

7.      On October 15, 1997, the IRS filed a proof of claim in Gilliam's bankruptcy case in the amount of $2,622,213.39 for unpaid income taxes for 1993 and 1995, a trust fund recovery penalty for 1995, and pre-petition employment tax liabilities for 1994 through 1996.[3]

## II.    Origin of the Settlement Proceeds

8.      On October 6, 1998, MESC and Gilliam filed an adversary proceeding (Adv. Pro. No. 98-80211) against Gold Mountain Electric Power Company, Ma-Li Kuo, Craig M. Rankin, and Levene, Neal, Bender & Rankin, LLP, seeking to recover damages resulting from allegedly fraudulent and negligent misrepresentations in the negotiation and performance of agreements that formed the basis for MESC's Plan of Reorganization.  MESC and Gilliam subsequently reached a settlement with two of the defendants, Craig M. Rankin and Levene, Neale, Bender & Rankin, LLP.

9.      On January 5, 2004, Hovis, as trustee for the MESC estate, filed a Notice of Proposed Settlement and Compromise and Opportunity for Hearing with this Court.  Under the proposed settlement, Rankin and his firm agreed to pay $2,200,000 to the estate and $300,000 to Gilliam in full settlement of any and all claims of the settling parties. The settlement further required Hovis to place $100,000 (of the $2,200,000) in escrow for the benefit of Gilliam in the

---

[3]      The IRS's proof of claim is *prima facie* evidence as to the validity and amount of the IRS's claims pursuant to the Federal Rules of Bankruptcy Procedure.

event MESC could not fund a confirmable plan. This Court approved the proposed settlement on March 14, 2004.

10. In connection with the litigation referenced above, Gilliam, GEFT, Hovis, and Anderson entered into a Release and Settlement Agreement in March 2002 through which Gilliam agreed to assist the estate in its lawsuits.[4]  The Release and Settlement Agreement authorized the creation of a liquidating trust to hold the funds owed to Gilliam as compensation for his contributions to the estate's lawsuits:

> Gilliam as Beneficiary of Liquidating Trust.  As compensation for his continuing contributions to the Litigation, and as set forth more fully in Section 10 of this Agreement, Gilliam shall be designated a Beneficiary of the Liquidating Trust. As a Beneficiary, Gilliam is entitled to receive twenty percent (20%) of the net proceeds of the Liquidating Trust.  As additional consideration, Gilliam shall receive a $5,000 cash payment from the Gilliam Estate pursuant to Section 18 of this Agreement.

On September 9, 2005, this Court entered an order approving the liquidating trust agreement ("LTA").

11. As trustee for MESC, Hovis received approximately $435,000 in settlement proceeds that the estate owed to Gilliam pursuant to the LTA and the Court's March 15, 2004 Order approving the Settlement Notice.  Hovis anticipates receiving additional proceeds from the estate's lawsuits that will be owed to Gilliam at a future date.

12. Since MESC failed to propose a confirmable plan of reorganization, Gilliam became entitled to receive the $100,000 placed in escrow and currently held by Hovis.[5]

---

[4]     In addition to the *Gold Mountain* litigation, the Release and Settlement Agreement references the following actions: *Marine Energy Systems Corp. v. Westinghouse Elect. Corp.*, Adv. No. 97-80353; *Hovis v. Siemens Westinghouse Power Corp.*, Adv. No. 97-80353; *Marine Energy Systems Corp. v. Raytheon-Ebasco Overseas Ltd.*, Adv. No. 97-80313; *Marine Energy Systems Corp. v. General Dynamics Corp.*, Adv. No. 98-80220.  In these actions, the Trustee asserted various commercial tort claims on behalf of MESC.

[5]     In March 2008, Gilliam filed a motion under Fed. R. Civ. P. 60(a) that sought to substitute GEFT, as a party to the March 2004 order approving the settlement, and thereby make GEFT the proper party to receive the $100,000 in settlement proceeds.  This Court denied that motion on July 15, 2008, and Gilliam did not appeal that

### III.    Gilliam's Tax Liabilities and Competing Liens

13.    By the time Hovis received the settlement proceeds referenced above, Gilliam owed significant federal income tax liabilities for the years 1993, 1995, 1996 and 1997 and a trust fund recovery penalty for the taxable quarter ending June 30, 1995 (assessed under 26 U.S.C. § 6672).

14.    Because Gilliam failed to pay the taxes to the IRS, federal tax liens arose in favor of the United States upon assessment and attached immediately to all property and rights to property belonging to Gilliam, including the funds Hovis held for his benefit.  *See* 26 U.S.C. § 6321.  The IRS, in accordance with section 6323(f) of the Internal Revenue Code, then filed notices of federal tax lien against Gilliam in California, South Carolina and Colorado.

15.    In May 2007, the IRS filed certificates mistakenly releasing the notices of federal tax lien which the IRS had filed with respect to Gilliam's income tax liabilities for 1993, 1995, and 1996.  In October 2007, the IRS corrected the mistake and filed a certificate revoking the release in California, where Gilliam resided.

16.    At no point did the IRS file a certificate releasing the notices of federal tax lien it filed with respect Gilliam's income tax liability for 1997 or the trust fund recovery penalty for the period ending June 30, 1995, which in total exceeded over $275,000 by May 2007.[6]

17.    On August 22, 2007 – following the certificates of release of the liens, but before the notices of lien could be reinstated – Gilliam and attorney John B. Kern,[7] purportedly on

---

order. See Hovis v. Gold Mountain Electric Power Co. (In re Marine Energy Systems Corp.), C/A No. 97-01929. Adv. Pro. No. 98-80211-JW, slip op. (Bankr. D.S.C. July 15, 2008).

[6]    Gilliam's brief in response to the Motion indicates that the IRS released all tax liens; however, his attachment thereto only indicates releases for 1993, 1995, and 1996.  There is no indication in Exhibit C supporting his affidavit that the IRS released the lien associated with the trust fund recovery penalty from 1995 or for his taxes associated with the 1997 tax year.  Gilliam indicates in his affidavit that he believed other liens were released but had no proof to that effect.

behalf of the GEFT, executed a Loan and Security Agreement, which was filed, along with a UCC Financing Statement, in the Contra Costa County, California Recorder's Office.  Neither the UCC Financing Statement nor the Loan and Security Agreement are signed by Jose DeAnacleto, the person Gilliam asserts is the trustee for GEFT.  Nor has GEFT provided any evidence to show that DeAnacleto (or anyone else authorized to act for GEFT) authorized John Kern to enter into this Loan and Security Agreement on GEFT's behalf, or to otherwise loan money to Gilliam.

18.    The revolving promissory note attached to the Loan and Security Agreement purportedly permits GEFT to loan Gilliam up to $500,000.00.  Under the Revolving Promissory Note, GEFT "may, but shall not be obligated to, advance sums . . . in one or more installments to [Gilliam], and any amounts so advanced shall be due under the terms of this Note as provided herein."  Any advanced amounts "shall be memorialized and endorsed on an Advanced Principal Grid maintained by the Trust and made a part hereof.  Any amounts endorsed on such Grid shall be presumed to have been advanced by [GEFT] to [Gilliam] unless provided otherwise."  (Id.)

19.    Although Gilliam claims he received over $400,000 pursuant to the Loan and Security Agreement, he produced no admissible evidence (such as the Advanced Principal Grid, bank records or endorsed checks) to show that he received any loan proceeds from GEFT, nor did he identify any accounts or records of disbursements by GEFT in his untimely responses to the United States' discovery requests.

---

[7]       At various stages of the numerous proceedings before this Court in the Gilliam and MESC bankruptcy matters, Kern has also acted as an attorney for Gilliam.

20.     Article 19 of the Trust also specifically prohibits Gilliam from receiving or benefiting from any part of the income or principal of the Trust thus specifically precluding a loan by GEFT to Gilliam.[8]

21.     Neither the Loan and Security Agreement nor the UCC financing statement make any reference to Gilliam granting GEFT a security interest in any settlement proceeds he might be owed under either the LTA or Settlement Notice.  Rather, as collateral for the purported loan agreement, Gilliam purportedly granted a security interest to GEFT in:

> Accounts, Equipment, General Intangibles, Books, Premises, Inventory, Negotiable Collateral, money, deposit accounts or assets, tangible and intangible proceeds or products of any of the foregoing, including proceeds of insurance covering any and all of the Collateral, and any and all Accounts, Equipment, General Tangibles, Inventory, Negotiable Collateral, money deposit accounts, or other tangible or intangible property resulting from the sale or dispositition of the Collateral, or any portion thereof or interest therein, and all proceeds thereof; all as set forth in the attached "Loan and Security Agreement" dated as of August 21, 2007 and signed by the Debtor and the Secured Party, and as further reflected at annex A to the Loan and Security Agreement," in the "Revolving Promissory Note."

## IV.    Gilliam's Attempts to Dispute the IRS's Claims and Liens

22.     In this Court and in other venues, Gilliam has unsuccessfully sought to invalidate the IRS's liens and the underlying tax liability for the tax years at issue.

23.     In November 1997, Gilliam filed an amended tax return (Form 1040X) for 1993 with the IRS, which sought to eliminate his 1993 tax liability.  In May 2000, the IRS disallowed the 1040X Gilliam filed for 1993 for insufficient documentation of the claimed loss.  Gilliam did not contest that disallowance in court but chose to submit a second amended return for 1993 in March 2006, which was similarly denied.

---

[8]     Gilliam asserted that he used the loan proceeds for living and legal expenses though the Trust expressly prohibited Gilliam from receiving any part of the Trust for his benefit or to pay any legal obligation.

24.    In March 2003, Gilliam filed an adversary proceeding (Adv. Pro. No. 03-80048) in this Court seeking a determination of his outstanding income tax liabilities for 1993 and 1995 and a preliminary injunction enjoining further collection of these taxes.   In that adversary, Gilliam alleged that the IRS's continued attempts to collect these taxes violated 11 U.S.C. § 524 and constituted malicious prosecution, and asked this Court to hold the IRS in contempt, award him damages of over $100 million, and enjoin all future collection activity.  Gilliam's complaint was dismissed for lack of service and personal jurisdiction and his subsequent motion for reconsideration was denied.

25.    In 2004, Gilliam filed a bankruptcy petition under Chapter 11 in Oakland, California in an attempt to address his debt to the IRS and the underlying liens.  The Bankruptcy Appellate Panel of the Ninth Circuit affirmed the dismissal under 11 U.S.C. § 1112(b) due, in part, to Gilliam's inability to fund a Chapter 11 plan.  Specifically, the Bankruptcy Appellate Panel affirmed the California bankruptcy court's finding that Gilliam lacked a "reliable theory upon which the [IRS] lien could be avoided."  See In re Gilliam, C/A No. NC-04-1311, slip op. at 16 (9th Cir. BAP Aug. 10, 2005).

26.    On January 21, 2005, Gilliam filed a motion to "reject" the IRS's and DOR's proofs of claim.   The United States opposed Gilliam's standing to object to the claim, and this Court, by Order dated September 23, 2005, agreed that Gilliam lacked standing unless the tax debts are nondischargeable, in which case the Court would abstain from determining the amount of the claims, or unless there would be a surplus to pay to Gilliam after payment of all other debts, which appeared unlikely at the time of the entry of the order and appears further unlikely given the dismissal of a suit against General Dynamics.

27.    Gilliam filed a motion to remove Anderson as trustee on March 16, 2006 ("Removal Motion").  In his memorandum in support of the Removal Motion, Gilliam alleged that Anderson knowingly filed tax returns with material misstatements concerning the Gilliam's taxable income, stating that Anderson was not authorized to file "certain 'estate' tax returns . . . for tax years 1996 and 1997  . . . [which tax returns] contained knowing false and fraudulent statements."  On May 2, 2006, Gilliam argued at the hearing on his Removal Motion that Anderson should be removed based upon his intentional misconduct in filing erroneous tax returns for the estate.  However, he subsequently withdrew his motion for lack of evidence.

28.    More recently in this Court, Gilliam has filed a motion to compel Anderson to amend certain tax returns, a motion convert this case to one under Chapter 11, and objections to the claims of the IRS and the SCDOR.  Each of these pleadings has been a further effort by Gilliam to address his outstanding tax issues with the IRS and the SCDOR and each pleading has been denied.  See In re Gilliam, C/A No. 96-76468-W, slip op. (Bankr. D.S.C. Aug. 12, 2008); In re Gilliam, C/A No. 96-76468-W, slip op. (Bankr. D.S.C. Oct. 22, 2008).

29.    Gilliam also attempted to dispute his tax liability for the 1993, 1995, and 1996 tax years before the IRS.   On December 2, 2008, an IRS hearing officer rejected Gilliam's arguments, all repeated by Gilliam in this adversary, to invalidate the liens associated with those tax years.

**V.      Proceedings in this Adversary**

30.    In  an effort to collect these taxes, the IRS, on March 31, 2004 and May 31, 2007, served notices of levy for the settlement proceeds on Hovis pursuant to section 6331 of the Internal Revenue Code (26 U.S.C.).  The federal tax liabilities underlying the levies as served on the trustee were assessed against Gilliam as follows:

| Tax Year or Period | Date of Assessment | Outstanding Balance (as of May 31, 2007) |
|---|---|---|
| 1993 (1040) | 11/16/1995 | $4,231,259.68 |
| 1995 (1040) | 9/8/1997 | $1,703,638.92 |
| 6/30/1995 (6672) | 3/10/1997 | $202,931.57 |
| 1996 (1040) | 7/3/2000 | $15,631.16 |
| 1997 (1040) | 5/12/2003 | $73,516.29 |
| **TOTAL** | | **$6,226,977.62** |

With the exception of tax year 1996, these assessments remain unpaid.

31.    On February 24, 2004, before the IRS served its first levy on Hovis, the South Carolina Department of Revenue ("SCDOR") served Hovis with a levy in an effort to collect income taxes that Gilliam owed to the state.

32.    Faced with competing levies from the IRS and SCDOR, Hovis filed this adversary to determine the relative priority of the taxing authorities' claims. By consent order, SCDOR agreed that the IRS's tax liens on the funds Hovis held for the benefit of Gilliam were entitled to priority over the lien held by the SCDOR.

33.    On Gilliam's motion, GEFT was added as a party to this case with the allegation by Gilliam that GEFT held a lien senior to the IRS and the SCDOR.

34.     GEFT filed an answer to the complaint in this matter asserting the seniority of its alleged lien[9] but GEFT failed to engage in or respond to the IRS's discovery requests and, critically, failed to respond to the IRS's Motion for Summary Judgment.[10]

35.     The evidence supporting the IRS's motion for summary judgment – in particular the various IRS transcripts of account and declarations of Gregory Yarbrough – demonstrate that the IRS sent Gilliam notices of the assessments and demands for payment of the above-referenced tax liabilities and that the IRS has a valid and enforceable lien.[11]

36.     Gilliam responded to the Motion and disputes that the IRS has a valid lien or a lien that is otherwise senior to GEFT for the following reasons:

a.     As to the 1993 taxes, the IRS failed to provide a notice of deficiency pursuant to 26 U.S.C. § 6212;

b.     As to the 1993 and 1995 taxes, the IRS failed to provide a Notice and Demand pursuant to 26 U.S.C. § 6303;

c.     As to the 1993 and 1995 taxes, the statute of limitations has expired and the IRS is now barred from enforcing any lien associated with these tax years;

d.     The intervening lien of GEFT is a senior lien since the IRS inadvertently released some of its liens in 2007 and did not reinstate until after GEFT's lien; and

---

[9]     GEFT also asserted that the settlement order should be amended pursuant to Rule 60(a) to make GEFT the proper party to receive the $100,000 in settlement proceeds; however, this argument was previously raised by Gilliam in the appropriate adversary, rejected a week before GEFT filed its answer, and not appealed.
[10]     Gilliam moved to withdraw the reference of this adversary, pending for nearly a year, after the IRS filed the Motion for Summary Judgment.
[11]     The IRS asserts that this Court lacks jurisdiction to determine Gilliam's underlying tax liabilities. This Court disagrees with that argument but need not address that issue in this Order based upon the other findings made herein.

e.      Gilliam is entitled to a wage exemption pursuant to 26 U.S.C.
§ 6334(a)(9).

37.      Although Gilliam offered affidavits in opposition to the IRS's Motion, there are no genuine issues of material fact and the IRS is entitled to summary judgment as a matter of law.

## CONCLUSIONS OF LAW

### I.      The Standard for Granting a Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is a favored mechanism "to secure the 'just, speedy, and inexpensive determination' of a case." In re Hovis, 325 B.R. 158, 163 (Bankr. D.S.C. 2005), quoting Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1322-23 (4th Cir. 1995).

When a motion for summary judgment is filed, the Court does not weigh the evidence, but determines if there is a genuine issue for trial. Listak v. Centennial Life Insurance Company, 977 F.Supp. 739, 743 (D.S.C. 1997), (citing Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986)). The Fourth Circuit has summarized Rule 56 procedure as follows:

> Fed.R.Civ.P. 56 prescribes specific procedures to be followed in submitting evidence for or against a summary judgment motion. These procedures help assure the fair and prompt disposition of cases. They ensure further that neither side in a dispute can unfairly surprise the other with evidence that the other has not had

> time to consider.  They also allow a district court to ascertain,
> through criteria designed to insure reliability and veracity, that a
> party has real proof of a claim before proceeding to trial.

Orsi v. Kirkwood, 999 F.2d 86, 91 (4th Cir. 1993).

Regardless of whether a movant may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact.  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003), cert. denied, 541 U.S. 1042 (2004). Once a moving party has made an initial showing that there is no general issue of material fact, the burden then shifts to the non-moving party to go beyond the pleadings and set forth affidavits, depositions, answers to interrogatories or admissions to show specific facts indicating a genuine issue for trial.  Campbell v. Capital One Bank (In re Broughton), C/A No. 99-06953-W, Adv. Pro. No. 00-80143, slip op. at 4 (Bankr. D.S.C. Mar. 20, 2001).

As in this case, "[w]here a movant supports its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant must proffer countering evidence sufficient to create a genuine factual dispute."  In re Dig It, Inc., 129 B.R. 65, 66 (Bankr. D.S.C. 1991).  "To counter a motion for summary judgment, the nonmovant may not rest on its pleadings or mere allegations of counsel."  Id. at 66-67.  Importantly, the "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hovis, 325 B.R. at 163 (quoting Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995)). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

**II.      The United States' Tax Liens Attached to the Proceeds Held by Hovis**

Under 26 U.S.C. § 6321, a lien arises in favor of the United States and against the property and rights to property, whether real or personal, of any taxpayer who is liable to pay a tax who neglects or refuses to do so.  The lien arises by operation of law at the time the liability is assessed and continues until the taxpayer's liability is satisfied.  See 26 U.S.C. § 6322. Although a notice of tax lien is required to establish the priority of the lien with regard to persons identified in section 6323(a), "notice, filing or recording are not required" for the lien to be valid and effective under 26 U.S.C. §§ 6321 and 6322.  See United States v. Bond, 279 F.2d 837, 841 (4th Cir. 1960).  As for the reach of a federal tax lien, "[t]he federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law."  United States v. Craft, 535 U.S. 274, 278 (2002).  Thus, courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."  Id.; see also United States v. Murray, 217 F.3d 59, 63 (1st Cir. 2000) (while state law determines what interest a taxpayer possesses in property, "federal law determines whether that state-law-created interest constitutes 'property' or 'rights to property' under the federal lien statute").  If the individual possesses an interest in the property pursuant to the applicable state law, then a federal tax lien encumbers "all property and rights to property, whether real or personal, tangible or intangible" of a taxpayer who fails to pay taxes due and owing after assessment and demand.  26 C.F.R. § 301.6321-1.

As the foregoing discussion illustrates, the reach of a federal tax lien is broad.  Indeed, Congress intended the lien "to reach every interest in property that a taxpayer may have."

United States v. Nat'l. Bank of Comm., 472 U.S. 713, 719-20 (1985); see also United States v. Metropolitan Life Ins., 874 F.2d 1497, 1500 (11th Cir. 1989) (tax lien reaches intangible interests in property such as annuities); United States v. Taylor, No. 6:99-9247-24, 2000 WL 1683007, at *3 (D.S.C. Sept. 27, 2000) ("[t]ax liens attach to all property, real or personal, belonging to the taxpayer at any time during the period of the lien, including any property or rights to property acquired by such person after the lien arises") (citing 26 C.F.R. § 302.6321-1).

Turning to the facts, Gilliam clearly has an interest in the funds held by Hovis under the terms of the Court's March 15, 2004 Order and the LTA approved by the Court in September 2005.  This Court reaffirmed Gilliam's interest in the funds received in connection with the *Gold Mountain* adversary when it denied Gilliam's motion to alter or amend the settlement order in an effort to divert some of those funds to GEFT.  See Hovis v. Gold Mountain Electric Power Co. (In re Marine Energy Systems Corp.), C/A No. 97-01929. Adv. Pro. No. 98-80211-JW, slip op. (Bankr. D.S.C. July 15, 2008).   As a result, the United States' tax lien attached to the disputed funds as soon as Gilliam's interest arose, and since SCDOR has already conceded its priority to the United States, the only question to decide is the relative priority of that federal tax lien vis-a-vis GEFT's claim.

**III.    Gilliam's Challenges to the Validity of the Liens Lacks Merit.**

**A.    The Taxes Liens are Valid and Enforceable**

Gilliam – as he has done without success in other forums – attacks the procedural validity of the IRS's liens.   Specifically, Gilliam asserts the IRS failed to comply with the notice requirements in sections 6303 and 6212 of the Internal Revenue Code.   The undisputed facts show otherwise.

First, Gilliam acknowledges that tax assessments were made against him – his outstanding federal tax liabilities for the tax years prior to 1997 are identified in the purported Loan and Security Agreement with GEFT. Gilliam nevertheless claims he never received a notice of deficiency before he was assessed income tax liabilities for 1993 and 1997 and for the trust fund recovery penalty for the period ending June 30, 1995.[12] Although section 6212 of the Internal Revenue Code generally requires the IRS to issue a notice of deficiency to a taxpayer before a tax deficiency can be assessed, no such notice was required here.

A notice of deficiency is only required in situations where there is a deficiency in the tax reported on a taxpayer's return; no such notice is required where the unpaid tax is based upon the liability reflected on the taxpayer's own returns. See 26 U.S.C. § 6211(a); Jones v. United States, 338 F.3d 463, 466 (5th Cir. 2002) ("[a] 'notice of deficiency' is only required in situations where there is a deficiency (e.g., the amount of tax imposed by the IRS exceeds the amount of tax shown by the taxpayer on his return) and not in situations where, as here, a taxpayer fails to pay the amount of tax shown on the returns"); Perez v. United States, 312 F.3d 191, 196 (5th Cir. 2002); see also Laing v. United States, 423 U.S. 161, 173-74 (1976) ("In essence, a deficiency as defined in the Code is the amount of tax imposed less any amount that may have been reported by the taxpayer on his return. § 6211(a)."). That is the case with respect to Gilliam's tax liabilities for 1997 and – as Gilliam admits – 1995.

Nor was Gilliam entitled to receive a statutory notice of deficiency prior to the assessment of the trust fund recovery penalty assessed against him pursuant to 26 U.S.C. § 6672. See Boyton v. United States, 566 F.2d 50, 53 (9th Cir. 1977); Shaw v. United States, 331 F.2d 493, 494-495 (9th Cir. 1964) ("there are no provisions requiring that section 6672 taxes shall be

---

[12]    Gilliam admits the IRS was not required to issue him a notice of deficiency for his 1995 tax debt, a debt that exceeds the monies held by Hovis.

subject to the deficiency procedures"); Austin v. C.I.R., No. CV-F-05-027 REC, 2005 WL 1324711, at *1 (E.D. Cal. Apr. 26, 2005).  Gilliam's arguments to the contrary are ill-founded.

Similarly, Gilliam's claim that he never received notice of the assessments against him or demands for their payment is insufficient to create a genuine issue of material fact that the notices and demands were sent.   Specifically, the IRS transcripts for 1993, 1995, 1997 and the trust fund recovery penalty for 1995 indicate that the statutory notices of balance due were each provided on the respective assessment dates.  This satisfied the notice requirements of section 6303.  Craig v. Commissioner, 119 T.C. 252, 260-61, 2002 WL 31526562 (2002) (a notice of balance due satisfies the notice and demand requirement of § 6303(a)).

Turning to the sufficiency of the government's proof, it is well-settled that Certificates of Assessments and Payments are presumptive proof of a valid assessment, a point Gilliam himself concedes (Doc. 96 at 8).  See United States v. Chila, 871 F.2d 1015, 1017 (11th Cir.1989), cert. denied, 493 U.S. 975 (1989).  Not only are such certificates, as well as TXMODA transcripts (relied upon by the United States for tax years 1993 and 1995), "routinely used to prove that tax assessment has in fact been made," Geiselman v. United States, 961 F.2d 1, 6 (1st Cir.1992), cert. denied, 506 U.S. 891 (1992) (citing Rocovich v. United States, 933 F.2d 991, 994 (D.C. Cir.1991)), they also demonstrate notice of the assessment and demand for its payment has been issued. See Geiselman, 961 F.2d at 6 (citing United States v. Chila, 871 F.2d at 1019; United States v. Lorsen Electric Co., 480 F.2d 554, 555 (2d Cir.1973)).

Gilliam challenges that evidence with two sets of literal transcripts he claims conflict with the ones relied upon by the United States and thus create "sufficient irregularities;" however, as explained by Revenue Officer Yarbrough, the literal transcripts supplied by Gilliam summarize the basis for his tax liabilities - they do not evidence every act taken to collect those

liabilities.  Thus, there is no genuine issue of material fact regarding the notices Gilliam claims he never received.  Rather, the evidence taken as a whole demonstrates that the IRS duly issued notices of the assessments against Gilliam and demands for their payment in accordance with 26 U.S.C. § 6303.  Whether Gilliam actually received the notices is irrelevant.  See Jones, 338 F.3d at 464 ("The Commissioner argues that whether Taxpayers received balance-due notices is not material to whether the IRS sent the notices"); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (affirming summary judgment where taxpayers' assertion they had not received notice was not material to whether the IRS had sent notice).

Gilliam's contention that the United States' attempts to enforce its liens against the disputed funds is barred because the statute of limitations on collection is unpersuasive.  Indeed, Gilliam acknowledges that the United States generally has 10 years from the assessment date to collect an unpaid tax debt, see 26 U.S.C. § 6502(a), and that the collection deadline is suspended by the bankruptcy filing, see 26 U.S.C. § 6503(h).  (Doc. 96 at 13-15.)  Without the benefit of any authority, Gilliam simply suggests that this tolling provision does not apply to him because this case involves post-petition property.  The Court rejects Gilliam's unsupported interpretation, and is persuaded that the filing of Gilliam's three bankruptcies tolled the ten-year collection statute until at least July 2010 (for tax year 1993).  In re William Jeffrey Gilliam, 2:96-BK-76468 (Bankr. D.S.C.) (Filed 07/08/1996); In re William J. Gilliam,  1:00-BK-11820 (Bankr. N.D. Cal.) (Filed 7/31/2000); In re William Jeffrey Gilliam, 4:04-BK-42153 (Bankr. N.D. Cal.) (Filed 4/19/2004).  See also In re Taylor, 81 F.3d 20, 23 (3d Cir.1996) ("§ 6503(h) of the Internal Revenue Code suspends the tax collection limitation period while the debtor's assets are in the custody or control of any court and for an additional six months after dismissal of the debtor's case"); United States v. Doe, No. C2-04-092, 2006 WL 3716899, at *1-*2 (S.D. Ohio Dec. 14,

2006) (held that pursuant to 26 U.S.C. § 6503(h), ten-year collection statute extended from the date of the debtor's Chapter 12 bankruptcy filing until the dismissal, plus six months); In re Cowen, 207 B.R. 207, 209 (Bankr. E.D. Cal. 1997) (relying on section 6503(h) to find that "the period to assess or collect the taxes is suspended for the period a bankruptcy petition is pending plus an additional six months").

**B.      Gilliam is Precluded from Contesting the Validity of the Liens**

*Res judicata* applies to administrative decisions when: 1) the agency acted in a judicial capacity; 2) the agency resolved the disputed issues of fact properly before it; and 3) the parties to the proceeding had an adequate opportunity to litigate the issues before the agency.  See United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560 (1966); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 485, 102 S.Ct. 1883 (1982).   The application of *res judicata* to administrative proceedings includes proceedings that involve the Internal Revenue Service.   See Fairmont Aluminum Co. v. C.I.R, 222 F.2d 622, 627 (4th Cir. 1961).

In this case, Gilliam, on more than one occasion, chose to raise these issues and seek relief before an IRS hearing officer.  The hearing officer considered and specifically rejected three of the defenses Gilliam now asserts in opposition to summary judgment.  Specifically, the hearing officer found that IRS filed a sufficient Notice of Federal Tax Lien;[13] that Gilliam is barred from raising the defect as to the alleged failure by the IRS to provide a notice and

---

[13]      "In summary, while some errors were made with respect to the filed lien and/or required lien notice, those errors were not of sufficient magnitude as to invalidate the lien, as per IRM 5.17.2.3.5. IRS corrected the lien/lien notice errors timely, in accordance with established IRS policies, procedures, and guidelines while preserving and extending the taxpayer's rights. The taxpayer's statement that the lien should be rescinded based on errors is not persuasive."

deficiency pursuant to 26 U.S.C. § 6320 and 6330[14] that the Gilliam is barred from raising an alleged defect of the notice and demand based upon a previous adverse ruling;[15] and made detailed findings that the statute of limitations had not run on the IRS's ability to enforce the liens for the 1993 and 1995 taxes.[16]  Considering the elements of *res judicata* and the prior Supreme Court decisions, the Court finds that Gilliam is bound by the decision of the IRS hearing officer and may not further contest these findings in this Court, which does not have appellate authority over the IRS forum that Gilliam chose to litigate these issues in.   See In re Varat Enterprises, Inc., 81 F.3d 1310, 1315-16 (4th Cir. 1996).

Further, Gilliam, through multiple pleadings in this Court, bankruptcy cases in other courts, and the administrative proceeding before the IRS, has attempted to attack and invalidate the claims and liens of the IRS.  Each of his efforts have failed and the doctrine of claim preclusion also now bars Gilliam from contesting the validity of the IRS's claims and associated liens, issues clearly related to Gilliam's prior pleadings and litigation.[17]  See id.

---

[14]    "Computer information shows the taxpayer has been involved in repeated and on-going litigation with respect to the hearing periods. The taxpayer acknowledged he challenged these liabilities in bankruptcy and/or other litigation, with the court(s) finding against the taxpayer. The taxpayer, thus, has had repeated prior opportunities to raise the issue of liability in court. The Settlement Officer, therefore, cannot consider this issue further."

[15]    "To the extent that this issue is a liability challenge with respect to the hearing periods, see No. 3 above. The taxpayer's case administrative file also shows that the taxpayer raised this issue previously with respect to the hearing periods during the taxpayer's prior CAP hearing regarding the levy issue. Appeals, thus, has already considered this issue. The Settlement Officer, therefore, cannot consider this issue further."

[16]    "Based on current computer information, the CSEDs with respect to the hearing periods were calculated, at a minimum, to be as follows:

CSED regarding Form 1040 for 1993 - July 29, 2010
CSED regarding Form 1040 for 1995 - March 20, 2011
CSED regarding Form 1040 for 1996 - February 23, 2011

The taxpayer's belief that the CSEDs have expired for the hearing periods, therefore, is misguided."

[17]    The California bankruptcy court also specifically rejected Gilliam's theories on which the IRS's liens could be avoided; thus necessitating the application of *res judicata* to the finding of the Bankruptcy Appellate Panel.  See In re Gilliam, C/A No. NC-04-1311, slip op. at 16 (9th Cir. BAP Aug. 10, 2005).

20

**IV.    The United States' Tax Liens Have Priority Over GEFT's Claim**

Although GEFT has been represented by counsel throughout this adversary proceeding and has formally asserted a claim to the disputed funds held by Hovis, GEFT failed to file any response in opposition to the United States' motion for summary judgment or otherwise contest the relief sought.  If the record establishes that the movant has met its burden under Fed. R. Civ. P. 56(c), then the absence of responsive affidavits or other record evidence creating a genuine issue of material fact for trial will justify an order granting the motion.  See Miles v. Bollinger, 979 F. 2d 848, 1992 WL 347635, at *2 (4th Cir. 1992) ("The movant's burden remains intact even if the nonmovant fails to respond to the summary judgment motion.").  In this case, the IRS proffered sufficient evidence to establish its right to judgment.  GEFT and Gilliam, assuming he has standing, failed to proffer sufficient evidence that would create a genuine issue of material fact.  See Dig It, 129 B.R. at 66.    The record demonstrates that there are no genuine issues of material fact, and that summary judgment is appropriate on the lien priority issue.  See Estate of Kimmell v. Seven Up Bottling Co. of Elkton, Inc., 993 F.2d 410, 412 (4th Cir. 1993) (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (additional citations omitted) ("In a case where 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' and summary judgment is proper.").

**A.    Priority Based Upon the 1995 Trust Fund Taxes and the 1997 Taxes**

The priority of a federal tax lien is a matter governed by federal rather than state law.  See Aquilino v. United States, 363 U.S. 509, 514, 80 S.Ct. 1277 (1960).  "The priority of the federal tax lien provided by 26 U.S.C. [§] 6321 as against liens created under state law is governed by the common-law rule-'the first in time is the first in right.'"  United States v.

Pioneer American Ins. Co., 374 U.S. 84, 87, 83 S.Ct. 1651 (1963) (quoting United States v. New Britain, 347 U.S. 81, 85-86, 74 S.Ct. 367 (1954)).  "It is critical, therefore, to determine when competing liens, whether federal- or state-created, come into existence or become valid for the purpose of the rule."  *Id.*  In making that determination, the priority of a state-created lien "depends 'on the time it attached to the property in question and became choate.'"  *Id.* at 88 (quoting New Britain, 347 U.S. at 86).  A state-created lien becomes choate, and is entitled to priority over a subsequent tax lien, "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  New Britain, 347 U.S. at 84-86.  Under this standard, GEFT's lien – assuming it even possesses a lien on the disputed funds –  is entitled to priority over a federal tax lien only if it acquired a choate lien against the settlement proceeds belonging to Gilliam prior to the date of the tax liens against Gilliam attached to those funds.  It did not.

No party has raised a genuine issue of material fact that the IRS lacks priority regarding its liens associated with the 1995 trust fund recovery penalty tax and the 1997 taxes.  The IRS has met its burden at the summary judgment stage regarding the validity and priority of its liens.  Gilliam's affidavit and supporting documentation only clearly indicates that the IRS released its lien as to the 1993, 1995, and 1996 taxes.  Since the IRS is prior in time as to GEFT regarding the liens for these two tax assessments and since the sum of these liens exceeds the $100,000 in settlement proceeds currently held by Hovis, the IRS is granted summary judgment based upon these two tax assessments.  See Pioneer American Ins. Co., 374 U.S. at 87.

**B.      As to the Remaining Tax Years, GEFT and Gilliam Have Failed to Create a Genuine Issue of Material Fact**

As to the remaining tax years, GEFT failed to provide any accounting of its purported lien, and the amount of the lien has never been established.  Since the amount of GEFT's lien remains unknown, any lien it may have on the settlement proceeds owed to Gilliam is inchoate, and the United States' lien takes precedence.  See New Britain, 347 U.S. at 84-86.[18]

Even if GEFT could show that it holds a choate lien on the dispute funds – and nothing Gilliam has attempted to submit on the trust's behalf shows that it does – GEFT has failed to demonstrate that its lien is entitled to priority under section 6323(a).  That section provides that a federal tax lien "imposed by section 6321 shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of [section 6323(f)] has been filed by the Secretary."  26 U.S.C. § 6323(a).  But in the absence of admissible evidence to show that GEFT qualifies as the holder of a security interest, the United States' priority in the disputed funds is established by the "silent liens" that arose upon assessment of Gilliam's taxes pursuant to section 6321.[19]  See United States v. Rogers, 558 F. Supp. 2d 774, 788-792 (S.D. Ohio 2008) (the release and subsequent reinstatement of a notice of federal tax lien does not impact the United States' lien under 6321, but only its priority with certain creditors protected under 26 U.S.C. § 6323(a).)

The Court notes that it is undisputed that Gilliam and GEFT entered into the Loan and Security Agreement before the IRS reinstated its notices of federal tax lien.  That fact alone,

---

[18]      Gilliam argues on GEFT's behalf that New Britain does not apply because it was rendered prior to the passage of the Federal Tax Lien Act; however, his argument is unpersuasive.  See, e.g., United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979); Air Power, Inc. v. United States, 741 F.2d 53 (4th Cir. 1984).

[19]      The tax liens for 1993 and 1995, which together secure tax debts that exceed $6 million, arose respectively on November 17, 1995 and September 8, 1997, well before the filing of GEFT's Loan and Security Agreement in August 2007.

however, does not demonstrate that GEFT holds a security interest in the funds at issue. To establish that it possesses a security interest in the funds held by Hovis, GEFT must show that its interest was (1) "acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability;" (2) "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation;" and (3) that at such time, GEFT parted with "money or money's worth." 26 U.S.C. § 6321(h)(1). GEFT has not made the requisite showing.

At no point, either in discovery or in opposition to the government's motion for summary judgment, has GEFT or Gilliam raised a genuine issue of material fact[20] that would defeat the Motion. Notably, neither GEFT nor Gilliam produced any evidence that GEFT "parted with money or money's worth," as required by section 6323(h)(1)(B). The Loan and Security Agreement attached to the UCC financing statement filed in Contra Costa County, California, merely indicates that Gilliam is entitled to receive loans of up to $500,000. The agreement further provides that all payments to Gilliam "shall be memorialized and endorsed on an Advanced Principal Grid maintained by the Trust and made a part hereof;" however, GEFT never produced the required grid, a condition precedent to a loan, or any other evidence to establish the purported loans that underlie its claimed security interest. In the absence of such proof, GEFT and Gilliam have failed to carry their burden in demonstrating that there is a genuine issue of material fact for trial.[21] See United States v. Powell, Civil Action No. CY379-

---

[20]        GEFT and Gilliam failed to establish: (a) that John Kern was authorized to negotiate the Loan and Security Agreement; (b) that GEFT lent money to Gilliam pursuant to this agreement; (c) that a payment grid exists, as would be required by the Loan and Security Agreement; (d) the source of the purported loans, (e) the provisions of the Trust Agreement that allowed GEFT to make the purported loans to Gilliam; or (f) that GEFT held an enforceable security interest under either South Carolina or California law. Each of these failures in evidence is fatal to Gilliam's or GEFT's ability to oppose the Motion.

[21]        The affidavit Gilliam submitted from GEFT's trustee, who failed to respond to discovery from the IRS, cannot overcome the failures of proof at the summary judgment stage. See e.g., Stallworth v. E-Z Serve

32, 1981 WL 1858, at *3-*4 (S.D. Ga. 1981) (party must present objective evidence in order to

establish that it parted with money or money's worth under 6323(h)).

Gilliam's attempt to rescue GEFT's claim to the disputed funds also fails as a matter of

law.  In an effort to show GEFT parted with money or money's worth, Gilliam points to

payments he claims to have received from the Trust in December 2006 and in June 2007.  The

Fourth Circuit, however, expressly rejects the notion that random payments of that nature can

serve as consideration for a security interest under section 6323:

> Although [section 6323(h)] does not expressly require that the holder of the
> purported security interest part with money or money's worth *in exchange for* the
> security interest, we are convinced that the separate acts-the act allegedly
> constituting the past consideration and the act granting the "security interest"-
> must be more than circumstantially related. The applicable regulations discuss
> "money or money's worth" in terms of "consideration," indicating that, as
> generally true in contract law, the reciprocating performance must be made in
> consideration of, *i.e.,* in a bargained exchange for, the former act. Other than
> appellants' continued assertion that the trustees' grant of the deed of trust rests on
> what the appellant characterizes as First National's prior "extension of credit,"
> there is no evidence in the record to support this view. Of course, the trustees
> would not have granted the deed of trust if First National had not lost the $3
> million, but this merely circumstantial relationship does not suffice.

See United States v. 3809 Crain Ltd. Partnership, 884 F.2d 138, 143 (4th Cir. 1989) (emphasis in

original).

Here, the Loan and Security Agreement make no mention of the two loans to which

Gilliam attests. Because GEFT failed to produce any evidence that it "contemporaneously

exchange[d] anything reducible to money or money's worth as consideration," it cannot claim

protection under section 6323.  See id. at 142.  Gilliam's reference to two subsequent loans

Convenience Stores, 199 F.R.D. 366 (D. Ala. 2001) (struck summary judgment reply exhibits that were responsive
to discovery requests and not disclosed in response to discovery requests); Shepard v. Frontier Comm. Servs., Inc.,
92 F. Supp. 2d 279 (S.D.N.Y. 2000) (same).  See also Fulmore v. Home Depot, USA, Inc., 423 F. Supp. 2d 861
(S.D. Ind. 2006); Currier v. United Technologies Corp., 213 F.R.D. 87 (D. Me. 2003).

purportedly advanced by GEFT does not change this result since those loans allegedly were made in August and September 2008, almost a year after the United States reinstated its notice of federal tax lien in California.   See In re Littleton, 177 B.R. 407 (Bankr. S.D. Ga. 1995) (a security interest does not exist to the extent it secures advances not yet made at the time the obligation is created and is not created until those loans are made).

In sum, GEFT, the party that would have the burden of proving the validity and priority of its lien at trial, produced no evidence that would indicate that it holds a valid lien or that it is entitled to priority over the liens of the IRS.   See Hughes, 48 F.3d at 1381 (finding the burden of demonstrating a genuine issue of material fact by the non-moving party is strong when that party bears the burden of proof at trial).   Consequently, the tax liens that arose upon assessment and attached to Gilliam's interest in the settlement proceeds, held by Hovis, are entitled to priority as a matter of law.[22]   See Catrett, 477 U.S. at 322 (holding Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

## V.      Gilliam Lacks Standing to Assert GEFT's Lien

In order for a party to have Article III standing there must be "injury in fact" to a legally protected interest that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical.   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).   In this case, the proceeds at issue will go to one of Gilliam's two creditors, one acknowledged by Gilliam in his motion to join GEFT as a party or the IRS which, though disputed by Gilliam through many failed pleadings, has conclusively established its claims both

---

[22]      Because GEFT does not qualify for protection under section 6323(a), this Court does not need to determine the effect of the reinstatement of a lien by the filing of a revocation of release under I.R.C. § 6325(f)(2).  See Treas. Reg. § 301.6325-1(f)(2)(iii)(b) (26 C.F.R.); United States v. Winchell, 793 F. Supp. 994 (D. Colo. 1992); In re Cole, 205 B.R. 668 (D. Mass. 1997).

in Gilliam's bankruptcy and through an administrative proceeding chosen by Gilliam.  As it found in 2005 with regard to the IRS's claims, this Court finds, under the Lujan standard, that Gilliam lacks standing to challenge the liens of the IRS in this proceeding since he will suffer no injury as the proceeds at issue will be paid to one of his creditors.

Gilliam also lacks standing to assert the claims and defenses of GEFT in this proceeding. To have Article III standing, Gilliam generally must assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or interests of third parties.  See Burke v. City of Charleston, 139 F.3d 401 (4th Cir. 1998).  "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." Kowalski v. Tesmer, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (citing Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).  The rights Gilliam seeks to assert in response to the Motion are those held by GEFT.   GEFT, though represented by counsel and participating in this adversary, filed no response to the Motion and though appearing at the hearing on the Motion made no argument and offered no evidence in opposition to the Motion.[23] Because GEFT has participated in this proceeding and has had the opportunity to assert its priority on its own behalf, Gilliam lacks standing, at the summary judgment stage, to make the defenses raised in his objection for GEFT. See Warth, 422 U.S. at 499; Hutchins v. Garrison, 724 F.2d 1425, 1432 (4th Cir. 1983).

---

[23]      The evening prior to the hearing on the Motion, the Court received correspondence from a California attorney, not admitted to practice before this Court, indicating that he now represented GEFT.  The attorney sought a continuance on the hearing on the Motion on grounds that John Kern abandoned GEFT as a client.  John Kern appeared at the hearing on the Motion and was unaware of this continuance request.  The continuance request was denied and John Kern has yet to file a motion to be relieved as counsel for GEFT and no party has sought to substitute John Kern as counsel.

**VI.    Gilliam's Exemption Claims Under 26 U.S.C. § 6334 are Immaterial**

Even though Hovis filed this adversary after receiving competing levies from the United States and the SCDOR, that fact does not negate the true nature of this action as a lien priority dispute.  See United States v. National Bank of Commerce, 472 U.S. 713, 721 (1985) ("[i]n contrast to the lien foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the government against diversion or loss while such claims are being resolved"); Resolution Trust Corp. v. Gill, 960 F.2d 336, 342 (3d Cir. 1992) ("[t]he administrative levy is a 'provisional remedy;' it 'does not determine whether the Government's rights to the seized property are superior to those of other claimants,' National Bank, 472 U.S. at 721, nor does the levy 'determine the ownership rights to the property,' id. at 731").

The service of the notice of levy simply gave the IRS the right to all property Hovis held for Gilliam.  See United States v. Eiland, 223 F.2d 118, 121 (4th Cir. 1955).  At that point, Hovis could have honored the tax levy, claimed that he did not possess the property belonging to the taxpayer, or asserted that the property was subject to a prior judicial attachment or execution. See National Bank of Commerce, 472 U.S. at 727.  Rather than make that choice, Hovis brought this suit and asked the Court to decide which defendant was entitled to the money the IRS and the SCDOR sought to levy.  At that point, the focus of the inquiry became the relative priority of the claimant's liens on the disputed funds.  Thus, Gilliam's argument that those funds are exempt from levy under 26 U.S.C. § 6334 is irrelevant. See Gill, 960 F.2d at 344 ("[o]nce we ascertain the nature of the taxpayer's property rights under state law, we look to federal law to determine competing priorities to the property") (emphasis added) (citing National Bank, 472 U.S. at 722); see also American Trust v. American Comm. Mut. Ins. Co., 142 F.3d 920, 923-25 (6th Cir.

1998) (affirming lower court's grant of summary judgment in favor of the United States holding that the United States could enforce tax lien created by 26 U.S.C. § 6321 in interpleader action against proceeds that were exempt from a levy under section 6334); In re Voelker, 42 F.3d 1050, 1051 (7th Cir. 1994) (federal tax lien attached to all of debtors property, including property exempt from levy under section 6334(a)).

Even if § 6334 applied to this case – and it does not for the reasons articulated above – Gilliam cannot show that the disputed funds are exempt from levy under 26 U.S.C. § 6334(a)(8) and (9). The evidence submitted by the United States shows that Gilliam received income in the following amounts for tax years 2004 through 2006: $72,000.00 (2004), $85,000.00 (2005), and $65,000.00 (2006). Gilliam did not refute these figures (which he reported on his tax returns for these years) and since there is no evidence to support that this income was subject to levy, he is not entitled to claim an exemption under section 6334(a)(9). See 26 C.F.R. § 301.6334-2(c).

Gilliam abandoned his exemption claim under section 6334(a)(8) at oral argument on January 29, 2009. Even without that concession, the claim fails for the same reason his claim under section 6334(a)(9) fails. In any event, there is no evidence to suggest that the disputed funds are necessary to comply with a support order related to a minor child, or that those funds will actually be used for that purpose as required by 26 C.F.R. 301.6334-1(a)(8).

## CONCLUSION

Based upon the foregoing, the Motion of the IRS is granted. To be clear, Gilliam is liable for the taxes at issue and the associated liens are valid and enforceable. Gilliam's efforts to challenge the claims and liens of the IRS in this Court are at an end. Further efforts by Gilliam to rehash these issues before this Court may be considered vexatious and frivolous and thus may subject Gilliam and his counsel to sanctions.

Accordingly, it is **ORDERED, ADJUDGED**, and **DECREED** that:

1.      The IRS's Motion for Summary Judgment is GRANTED;  and

2.      W. Ryan Hovis, Trustee, is ordered to distribute to counsel for the IRS all funds

currently held for William J. Gilliam within ten days from the date of this order.

Furthermore, Hovis is ordered to distribute to counsel for the IRS any additional

funds he receives that would be payable to Gilliam, up to the amount of the taxes

addressed herein, pursuant to this Order.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 24, 2009